**Mohammed Radi ABDULLAH, Plaintiff,**

v.

**SHERIDAN SQUARE PRESS, INC., Ari Ben Menashe, Zachary Sklar, Ellen Ray, Bill Schapp, Danny Mintz and National Book Network, Defendants.**

No. 93 Civ. 2515 (LLS).

United States District Court, S.D. New York.

May 13, 1994.

McHugh & Sherman, New York City (John F. McHugh, of counsel), for plaintiff.

Beldock Levine & Hoffman, New York City (Melvin L. Wulf, of counsel), for defendants.

## MEMORANDUM AND ORDER

STANTON, District Judge.

Plaintiff seeks a large amount of monetary damages for libel, claiming that defendants destroyed his business and made him a fugitive from his country, with the result that he now lives in poverty in England, and is seeking political asylum there.

At issue is the location of plaintiff's deposition.[1]

---

1. Plaintiff, who apparently cannot reenter England if he leaves while his application for asylum is pending, wishes his deposition to be taken in

England so it can be used at the trial of this case, should he be unable to attend. The defendants, although less eager to take the plaintiff's deposi-

### Defendants' Position

The defendants urge the general rule that a plaintiff must appear for his deposition in the forum in which he has brought the suit or, if that is impractical, pay the defendants' costs in going to the place of his residence. To conduct the examination adequately, they claim, would require the presence of defendant William Schapp, Ari Ben–Menashe (the book's author, who resides in Montreal, Canada), their counsel Melvin Wulf, Esq., and his associate Daniel Kummer, Esq. (*See* Wulf letter to Court dated 1/21/94, at 4–5.) They say,

> The only conceivable way to try to avoid prejudice to the defense if plaintiff's deposition is to be taken in England would be to require plaintiff to prepay all costs of transportation, food and lodging in England for [Mr. Wulf], Mr. Kummer, Mr. Schaap and Mr. Ben–Menashe, and to prepay the additional fees that would be incurred by [Mr. Wulf] and Mr. Kummer in having to go abroad for the deposition.

(*Id.*, at 5–6.) Defendants further contend that

> If we are required to take the deposition in London at defendants' expense, there is an additional expense that will be incurred that should fairly be the plaintiff's burden. That is the expense of having to pay for an office in which to take the deposition. That is an extraordinary expense to have to incur and should be the plaintiff's responsibility.

(Wulf letter to Court dated 5/9/94, at 1.)

To reduce cost, plaintiff offered the use of his apartment as the location of the deposition. (McHugh letter to Court dated 5/9/94.) Defendants objected, saying they "... prefer a more professional and neutral venue." (Wulf letter to Court dated 5/10/94.)

### Plaintiff's Position

The complaint alleges that defendants maliciously and falsely accused plaintiff, a private individual and highly-decorated former Jordanian army officer, of being an informant for the Israeli intelligence agency called the Mossad, of participation in activities of the Palestinian Liberation Organization, of involvement in the piracy of the Achille Lauro in 1985 and of participation in a plot to blow up a civilian aircraft (among other misdeeds). As a result of the defendants' allegations, he is no longer "respected in the Arab World as a military expert or otherwise"; he has "been warned not to return to Jordan", and has been forced to seek political asylum in the United Kingdom. (Abdullah Cert. ¶ 6; *see also* Bonar Aff. ¶ 3, pp. 11–12; Aburish Aff. ¶ 2.) His business having been destroyed by the allegations contained in the book, (*see* Abdullah Cert. ¶ 6; Aburish Aff. ¶ 10.), he "has lived since late 1992 by pawning his possessions," (McHugh letter to Court dated 1/18/94, at 4 & Ex. I (pawn receipts)), and since January of 1994, he has received social security due to a disability. (McHugh letter to Court dated 1/18/94, at 4 & Ex. J.) A letter from plaintiff's immigration consultant in London asserts that "I have advised the Home Office of Mr. Radi's court summons in the United States for the 1st February 1994 and have been advised that whilst he can travel to the United States he would not be allowed to return to the United Kingdom to pursue his asylum application." (Farley letter dated 1/19/94, Ex. D to McHugh letter to Court dated 1/18/94.)

### Discussion

In *Seuthe v. Renwal Prods., Inc.*, 38 F.R.D. 323, 324 (S.D.N.Y.1965) (citations omitted), the court stated:

> Ordinarily, a defendant is entitled to examine a plaintiff in the forum where plaintiff has chosen to sue. However, if special circumstances are shown, such as hardship or burden to the plaintiff, which outweigh any prejudice to the defendant, the general rule may yield to the exigencies of the particular case. The matter rests in the discretion of the court and there must be a careful weighing of the relevant facts.

*See also Clem v. Allied Van Lines Int'l Corp.*, 102 F.R.D. 938, 939 (S.D.N.Y.1984) ("In addressing motions for protective orders pursuant to Rule 26(c), this Court has long

---

tion and reluctant to go to England to do it, have nevertheless complained about the length of time

that the litigation has been pending and have stated their wish to conclude it.

enunciated the policy of requiring a non-resident plaintiff who chooses this district as his forum to appear for deposition in this forum absent compelling circumstances"); *see generally* 8 Wright & Miller, Federal Practice and Procedure § 2112 (1970) ("As a normal rule plaintiff will be required to make himself available for examination in the district in which he has brought suit. Since he selected the forum, he will not be heard to complain about having to appear there for a deposition. But this is at best a general rule, and is not adhered to if plaintiff can show good cause for not being required to come to the district where the action is pending").

■ In applying the general rule, a court may consider external constraints on the plaintiff's choice of forum. *See Ellis Air Lines v. Bellanca Aircraft Corp.*, 17 F.R.D. 395, 396 (D.Del.1955) ("There is a principle that a plaintiff having selected a particular forum for the adjudication of his case should be prepared to answer a notice of deposition in that locality. This principle loses some weight where the plaintiff has no choice of forum but, as here, must bring his suit in one particular jurisdiction or none at all"); *Endte v. Hermes Export Corp.*, 20 F.R.D. 162, 164 (S.D.N.Y.1957) ("In the case at bar there are special circumstances indicating that plaintiff should not be compelled to come to New York unless it be shown that written interrogatories are inadequate for defendants' legitimate purposes. Plaintiff apparently had no choice of forum. There is no showing that he could have obtained jurisdiction over defendants elsewhere or pursued his remedy against them anywhere other than in this district where they resided and did business. Unless he brought suit against them here he may well have been without remedy for the egregious wrongs which he claims were committed against him. His financial inability to comply with an order directing him to appear here may well have been caused, as he claims, by the financial reverses brought about by the acts he charges against the defendants"); *Kovalsky v. Avis Rent-A-Car, Inc.*, 48 F.R.D. 453, 454 (D.P.R.1969); *Imperial Chems. Indus., PLC v. Barr Lab., Inc.*, 126 F.R.D. 467, 472 (S.D.N.Y.1989) (Lee, M.J.) ("the rationale of [the general rule] has little force in a case arising under 21 U.S.C.

§ 355(j), where the choice of forum is effectively dictated by the defendant"); *Operative Plasterers' & Cement Masons' Int'l Ass'n v. Benjamin*, 144 F.R.D. 87, 91 (N.D.Ind.1992) (Pierce, M.J.); 8 Wright & Miller § 2112 at 409 ("And if plaintiff had no choice of forum to begin with, there seems very little reason to give weight to his selection of the forum as against facts indicating that another place for taking the deposition would be more just").

Here, plaintiff had no genuine choice of forum, because defendants are located in the United States. Even if defendants were subject to jurisdiction in the United Kingdom, a judgment rendered by a British court on a claim of libel might not be enforceable against them in the United States. Indeed, this court has already dismissed plaintiff's second cause of action because "establishment of a claim under the British law of defamation would be antithetical to First Amendment protections accorded the defendants". *Abdullah v. Sheridan Square Press, Inc.*, No. 93 Civ. 2515 (LLS), 1994 WL 419847, slip op. at 1 (S.D.N.Y. May 3, 1994).

■ Under all the circumstances, the most reasonable solution is to hold plaintiff's deposition in London, at his apartment as he has offered (*see* McHugh letter to Court dated 5/9/94), or at such reasonable office location as defendants provide at their expense. If either side wishes the deposition to be videotaped, it should bear whatever extra cost is involved in that procedure, and if the other side wishes a copy of the video tape, the extra cost of videotaping should be borne equally. Each party shall bear its own travel and lodging costs in the first instance, but if the defendants prevail upon the trial of the action, their reasonable costs, including travel expenses and reasonable attorney's fees for one attorney, may be awarded as additional costs. The costs of the court reporter shall likewise be shared equally in the first instance, subject to such reallocation as may afterward appear just to the court.

Objections to questions during the course of the deposition should, to the extent such issues can be foreseen and dealt with prospectively, be handled as follows:

(1) plaintiff shall respond to all questions put to him by defendants except those inquiring into matters protected by the attorney-client privilege or matters secret under the laws of the nation involved, which need not [2] be answered;

(2) unless other cogent considerations intervene, an assertion of privilege on either of those two grounds, and a refusal to answer such questions, shall foreclose the plaintiff from later waiving the privilege and offering such evidence at trial; and

(3) answers to questions to which objection is made on other grounds can be given under seal and in the presence of counsel only, to be released only if this court later so directs.

The court relies on the professional skill and resource of counsel to resolve other disputes which may arise during the course of the deposition.

So ordered.

---

**2.** Such refusals to answer may involve other consequences if, for examples, the court later determines they were unjustified or that preclusion of related claims or evidence is fair to defendants under the circumstances.