**In re HANDY & HARMAN REFINING GROUP, INC.**

**Doe Run Peru S.R.L., Plaintiff,**

**v.**

**Handy & Harman Refining Group, Inc., Defendant.**

**Bankruptcy No. 00–20845.
Adversary No 02–2016.**

United States Bankruptcy Court, D. Connecticut.

July 1, 2003.

Eugene B. Berman, J.D., Kamberg, Berman, P.C., Springfield, MA, J. Thomas Beckett, Dianna M. Gibson, Parsons Behle & Latimer, c/o Eugene B. Berman, J.D., Springfield, MA, for Plaintiff.

William S. Fish, William H. Champlin III, Paul R. Guggina, Tyler, Cooper & Alcorn, LLP, Hartford, CT, for Defendant.

### RULING ON MOTION FOR PROTECTIVE ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

#### I.

Doe Run Peru, S.R.L. ("Doe Run"), a creditor holding a contested claim for $1,750,297.22 in the liquidating Chapter 11 case of Handy & Harman Refining Group, Inc. ("the debtor"), has filed a motion for a protective order ("the motion"), pursuant to Fed.R.Civ.P. 26(c),[1] made applicable in

---

1. Rule 26(c) states, *inter alia:*

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of

bankruptcy proceedings by Fed. R. Bankr.P. 7026. The principal thrust of the motion is to secure a court order to require the debtor to conduct its deposition upon oral examination under Fed.R.Civ.P. 30(b)(6),[2] made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7030, of a Doe Run representative at Doe Run's principal place of business in Lima, Peru, South America, telephonically if desired, rather than as presently scheduled in Hartford, Connecticut, where the debtor's case is pending.[3] At the hearing held on the motion, on June 24, 2003, the debtor objected to the granting of the motion.

## II.

### BACKGROUND

#### A.

To clarify the nature of its claim, and by agreement of the parties, Doe Run, on February 5, 2002, filed a complaint to replace its proof of claim. The complaint alleges that Doe Run is in the business of mining, refining and selling silver, with its principal place of business in Lima, Peru, South America; that on or about October 29, 1999, Doe Run sold silver in the amount of $1,750,297.22 to the debtor, under a "periodic sales agreement" between Doe Run and a Peruvian entity called "Panexim"; that the debtor delivered payment to Panexim on or about November 18, 1999; and that "[s]ome time during the subsequent four weeks, however, [the debtor] instructed Panexim to misdirect those funds." (Compl.¶ 13.) In its complaint, Doe Run alleges three causes of action, including: non-receipt of payment for delivered silver; breach of contract or quasi-contract which "exists by virtue of the course of performance of the parties"; and civil conspiracy between the debtor and Panexim to convert payment to Doe Run for illegal purposes. (Compl.¶ 23.)

The debtor, in its answer to the complaint, denied the principal allegations of the complaint and filed as affirmative defenses that "Doe Run has been paid in full or in part for the silver that is the subject of its claim" and that the claim "is barred by the equitable doctrine of estoppel." (Answer at 4.)

The court, on April 25, 2002, entered an initial scheduling order, pursuant to Fed. R.Civ.P. 26(f), made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7026, establishing, *inter alia*, August 23, 2002 as the date for completion of discovery. On September 10, 2002, the court, upon the debtor's request, extended the discovery deadline to November 30, 2002. On December 4, 2002, the court, upon the parties' joint request, extended the discovery deadline to April 30, 2003. On April

---

discovery other than that selected by the party seeking discovery.

**2.** Rule 30(b)(6) provides:

A party may ... name as the deponent a public or private corporation ... and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

**3.** The debtor, previously one of the world's largest refineries of precious metals, filed its Chapter 11 petition in this court on March 28, 2000. Doe Run, a Peruvian limited liability company, is a wholly-owned subsidiary of a New York corporation, and one of Peru's largest exporters, with a work force exceeding 4,300 people.

16, 2003, the court, upon the parties' joint request, extended the discovery deadline to June 16, 2003.[4]

### B.

Doe Run filed the motion on June 12, 2003, alleging that the debtor sent Doe Run a notice of deposition requesting to depose a Doe Run representative in Hartford, Connecticut on June 10, 2003; that such deposition would be oppressive, and unduly burdensome and expensive for Doe Run; and that it would be more efficient to hold the deposition in Lima, Peru, where the deponent and documents are located. Doe Run submitted an affidavit of its vice president, averring that Doe Run is in financial difficulties with significant liquidity problems; that the Doe Run representative who will testify is key management personnel who should remain in Lima, Peru to carry on his day-to-day duties; and that notwithstanding the existence of a "state of national emergency" in Peru, difficulties of traveling to and from Peru "have not substantially increased from those existing prior to the declaration of the national emergency." (Aff.¶ 31.)

The debtor argues that it is more cost effective to have one deponent travel to Hartford from Peru than to force the debtor's insolvent estate to pay for an attorney and a court reporter to fly to Peru. Further, the debtor notes that a deposition in Hartford could readily be videotaped and used at trial in place of the deponent's live testimony. The debtor denies that Doe Run's affidavit contains a basis for the court to conclude that extreme financial hardship exists sufficient to mandate a telephone deposition. The debtor asserts a telephonic deposition is not practical be-

cause Peruvian law would govern certain aspects of the deposition and would hamper this court's involvement if issues arose during the deposition; and, in view of the allegations in the complaint, the debtor would need to assess the deponent's credibility, which it cannot do during a telephonic deposition. The debtor's papers include a document issued by the U.S. Department of State, dated May 2, 2003, which advises United States' citizens that until July 24, 2003, American citizens should use caution in traveling to Peru due to the "potential for terrorist activity by Sendero Luminoso and other groups in Peru." (Def.'s Ex. B.) The debtor claims that the court should consider this warning when deciding where the deposition should take place.

### III.

### A.

### DISCUSSION

■ The party noticing a deposition may set the place for the deposition of another party wherever it wishes, subject to the power of the court to grant a protective order designating a different place. *See Buzzeo v. Board of Education,* 178 F.R.D. 390, 392 (E.D.N.Y.1998). Rule 26(c) provides that a court may make an order "for good cause shown" to protect a party from "oppression, or undue burden or expense." When a corporation is a party, there is a presumption in favor of conducting depositions of the corporation in its principal place of business, but "the presumption is not a strong one and operates primarily where other factors do not favor any particular site for depositions." *Buzzeo,* 178 F.R.D. at 392 (internal quota-

---

4. In these last two joint requests to extend the discovery deadline, the parties represented "Doe Run is in the process of gathering information and documents from Peru, which process has been complicated by Doe Run's limited ability to locate adverse persons and entities believed to have relevant information and documents."

tion marks omitted). Although "[t]here is a principle that a plaintiff having selected a particular forum for the adjudication of his case should be prepared to answer a notice of deposition in that locality," *Abdullah v. Sheridan Square Press, Inc.* 154 F.R.D. 591, 593 (S.D.N.Y.1994), since Doe Run had no choice but to file its proof of claim in the Hartford bankruptcy court, that principle does not apply in the present circumstance. Accordingly, the court is left to consider whether Doe Run has shown "good cause" in the motion through analyzing the primary factors of cost, convenience and litigation efficiency. *See Buzzeo,* 178 F.R.D. at 393.

### B.

■ The court concludes that Doe Run has not carried its burden of establishing good cause for the court to make the requested protective order. The court is not satisfied with Doe Run's assertion that to have one employee travel to Hartford for two or three days will result in the extreme hardship contemplated by Rule 26(c). The problem of bearing litigation costs for an ailing company is no less severe for the debtor than for Doe Run. In addition, if the parties hold a video deposition, the Doe Run representative will not have to again travel to Hartford for the eventual trial. The debtor's costs in having its attorney and a court reporter travel to Lima, Peru, are, facially at least, double the cost to having Doe Run's representative come to Hartford. Finally, the U.S. Department of State's issuance of a travel alert concerning travel to Peru additionally counsels denial of Doe Run's motion. The affidavit submitted by Doe Run on this aspect of the issue is hardly reassuring about the personal risk involved. *See Doe v. Karadzic,* No. 93 Civ. 878, 1997 WL 45515, at *4 (S.D.N.Y. Feb. 4, 1997) (noting the dangerous conditions in the former Yugoslavia as a factor when deciding that New York would be a more appropriate location to hold the deposition).

■ Fed.R.Civ.P. 30(b)(7) provides that "[t]he parties may stipulate in writing or the court may upon written motion order that a deposition be taken by telephone or other remote electronic means." The debtor refuses to so stipulate and its reasons have merit and decisional backing, taking into account Doe Run's assertion that many of its documents are in Spanish and an interpreter will be necessary during the deposition. *See Dubai Islamic Bank v. Citibank,* No. 99 Civ.1930, 2002 WL 1159699, at *12 (S.D.N.Y. May 31, 2002) (declining to order a telephonic deposition after finding that no hardship existed justifying a departure from ordinary discovery tools, that the existing language barrier would make a telephone deposition impractical, and that the availability of the court to resolve disputes that may arise during the depositions counsels in favor of conducting them in New York, not Dubai).

### IV.

### CONCLUSION

For the aforementioned reasons, the court, exercising its discretion as to the location of the deposition, denies Doe Run's motion to make a protective order. It is

SO ORDERED.

### ORDER

The motion of Doe Run Peru S.R.L. for a protective order having been heard, after due notice, and the court having rendered a ruling of even date, it is

ORDERED AND ADJUDGED that the motion be denied.